UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 1:06-00009 |
| ) | Judge Trauger |
| v. ) | |
| ) | |
| DAMEON THOMAS ) | |
| ) | |

## MEMORANDUM AND ORDER

The defendant has filed a Motion to Dismiss Counts Two, Three, and Four of the Superseding Indictment (Docket No. 79), to which the government has responded in opposition, (Docket No. 85). For the reasons discussed herein, the defendant's motion will be denied.

The defendant was stopped by police officers on September 29, 2005, in the parking lot of the Shadybrook Mall, in Columbia, Tennessee, after the officers detected the scent of marijuana wafting from his vehicle. The defendant admitted to possessing a misdemeanor amount of marijuana and the officers searched his car, discovering a loaded Taurus 40 caliber pistol which, as the officers were soon to learn, had been reported stolen. The defendant was placed under arrest and, on October 11, 2006, the original Indictment was returned, containing one count of possessing a firearm as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1). On July 18, 2007, a Superseding Indictment was returned against the defendant, adding three new charges. Those charges are (1) possessing ammunition as a convicted felon in violation of 18 U.S.C. §§ 2, 922(g)(1) and 924, (2) possessing a stolen firearm in violation of 18 U.S.C. §§ 2 and 922(j), and (3) possessing marijuana in violation of 21 U.S.C. § 844(a).

The case was originally scheduled for trial on March 6, 2007. (Docket No. 10).

1

However, the trial was reset for March 13, 2007 (Docket No. 18), reset again for April 17, 2007 (Docket No. 27), reset a third time for July 24, 2007 (Docket No. 36), and is currently scheduled for October 30, 2007 (Docket No. 84).

The defendant alleges that the government violated his rights under the Due Process Clause of the Fifth Amendment by vindictively prosecuting him. Specifically, the defendant alleges that the government added the three new charges in the Superseding Indictment to punish him for asserting his constitutional right to trial. It is a longstanding principle that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *United States v. Goodwin*, 457 U.S. 368, 372 (1982) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)). Therefore, "while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right." *Id*.

However, because "[t]he imposition of punishment is the very purpose of virtually all criminal proceedings," the Supreme Court has recognized that "[t]he presence of a punitive motivation . . . does not provide an adequate basis for distinguishing governmental action that is fully justified as a legitimate response to perceived criminal conduct from governmental action that is an impermissible response to noncriminal, protected activity." *Id*. at 372-73. Therefore, in order to demonstrate that he has been subject to a vindictive prosecution—in the absence of "objective evidence that a prosecutor acted in order to punish the defendant," *United States v. Dupree*, 323 F.3d 480, 489 (6th Cir. 2003)—the defendant must demonstrate that "a reasonable likelihood of vindictiveness exists." *Goodwin*, 427 U.S. at 373.

This standard is "an objective one," and the inquiry is "whether a reasonable person

2

would think there existed a realistic likelihood of vindictiveness." *United States v. Andrews*, 633 F.2d 449, 454 (6th Cir. 1980). This is because "the fear of such vindictiveness may unconstitutionally deter a defendant" from exercising the right at issue, and defendants are "entitled to pursue" their rights "without apprehension that the state will retaliate." *Id*. (citing *Blackledge v. Perry*, 417 U.S. 21, 28 (1974)). There are sound reasons in support of this approach. As the Sixth Circuit pointed out in *Andrews*, focusing on an objective standard is the only viable method for protecting defendants being prosecuted vindictively because, "[i]f the standard to be applied was proof of actual vindictiveness, a trial judge would have the Hobson's choice of either not barring the extra charge or of saying that a prosecutor acted wrongly." *Id*. at 454-55. That is, "a trial judge would, in effect, be calling a prosecutor a liar where the prosecutor claimed inadvertence and the judge ruled against him." *Id*. at 455. Accordingly, the Sixth Circuit has wisely protected the "due process value that defendants be 'freed of apprehension of such a retaliatory motivation,'" *id*. at 454 (quoting *Blackledge*, 417 U.S. at 28), by promoting "[a] standard of 'realistic likelihood of vindictiveness,'" which "allows the barring of charges in appropriate situations without the need to find that the prosecutor acted in bad faith." *Id*. at 455.

An objective, "realistic likelihood of vindictiveness" is demonstrated by the following factors: "(1) exercise of a protected right; (2) a prosecutorial stake in the exercise of that right; (3) unreasonableness of the prosecutor's conduct; [and] (4) the intent to punish the defendant for exercise of the protected right." *United States v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001) (citing *Nat'l Eng'g & Contracting Co. v. Herman*, 181 F.3d 715, 722 (6th Cir. 1999).

In analyzing these factors, the Sixth Circuit has directed that the court should first

3

determine whether the defendant has demonstrated (a) a prosecutorial "stake" in deterring the defendant's exercise of his right, and (b) that the prosecutor's conduct was unreasonable. *See Andrews*, 633 F.2d at 454 (6th Cir. 1980). Once that showing has been made, the burden shifts to the government to rebut the "realistic likelihood of vindictiveness," *Suarez*, 263 F.3d at 479, which is achieved by putting forth an "objective, on-the-record explanation." *Andrews*, 633 F.2d at 456. Finally, if "in light of the prosecutor's explanation, the district court no longer believes that there exists a realistic likelihood of vindictiveness, then the charge will not be barred." *Id.*; *see also Suarez*, 163 F.3d at 479 ("[I]f the first three elements are present, this may help establish grounds to believe the fourth is present, that there is the required 'realistic likelihood of vindictiveness' which the government would have to rebut.") (citing *Bragan v. Poindexter*, 249 F.3d 476, 481-82 (6th Cir. 2001)).

### A. A Prosecutorial "Stake" In Deterring the Defendant's Exercise of His Right

A prosecutorial "stake" requires more than "the mere possibility that prosecutorial or judicial conduct may be vindictive." *Andrews*, 633 F.2d at 455. That is, "the mere appearance of vindictiveness is not enough to trigger . . . sanctions;" instead, "[t]he factual situation must pose a *realistic likelihood* of vindictiveness." *Id.* (emphasis added) (citing *Chaffin v. Stynchcombe*, 412 U.S. 17, 29 (1973) ("[T]he [C]ourt [in *Pearce*] intimated no doubt about the constitutionality of higher sentences in the absence of vindictiveness despite whatever incidental deterrent effect they might have . . . .")); *see also Goodwin*, 457 U.S. at 372-73 (1982) ("The presence of a punitive motivation . . . does not provide an adequate basis for distinguishing governmental action that is fully justified as a legitimate response to perceived criminal conduct from governmental action that is an impermissible response to noncriminal, protected activity.")

4

In *Bordenkircher v. Hayes*, 434 U.S. 357, 360-61, the Supreme Court addressed whether a defendant could demonstrate vindictive prosecution where, immediately following the termination of plea bargaining, the government filed a superseding indictment. The superseding indictment included charges filed under a different, recidivist statute, which substantially increased the possible length of sentence. *Id.* at 360. The Court noted that, "'[w]hile confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'—and permissible—'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'" *Id.* at 364 (quoting *Chaffin*, 412 U.S. at 31).

The Court in *Bordenkircher* reasoned that it had "necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty." *Id.* Accordingly, the Court held that the prosecutor's actions, "which no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges" could not violate the Due Process Clause. *Id.* In the context of the Sixth Circuit's test, *Bordenkircher* stands for the proposition that adding additional charges purely as a result of the failure of the plea bargaining process cannot, by itself, constitute a prosecutorial "stake" in the defendant's exercise of his right. *See Suarez*, 263 F.3d at 479 ("[I]f the charges are brought simply as the result of failure of the plea bargaining process, they are not vindictive.") (citing *Andrews*, 633 F.2d at 456) (following *Bordenkircher*, 434 U.S. at 363).

In *Andrews*, the Sixth Circuit found that *Bordenkircher*—although foreclosing the possibility of vindictive prosecution resulting from the "give and take" of plea bargaining—did

5

not foreclose all vindictive prosecution claims arising in the pre-trial stage. 633 F.2d at 455-56. Instead, the Sixth Circuit held, in *Andrews*, that *Bordenkircher* "must be confined to the plea bargaining context in which it arose" and that retaliatory behavior in the pre-trial stage was still subject to judicial scrutiny. *Id.* at 456.

Although *Andrews* can be cited for the proposition that prosecutorial vindictiveness can potentially arise in the pre-trial setting, it does not support the defendant's position here. In *Andrews*, the defendants asserted their pre-trial rights to be released on bail, after which the government filed a superseding indictment with an additional charge. *Id.* at 450-51. The district court concluded that, by adding the charge, the government had acted with impermissible prosecutorial vindictiveness. *Id.* at 451. Initially, a divided Sixth Circuit panel reversed that decision, with one judge advancing a "rebuttable prima-facie vindictiveness test," another judge advancing the position that prosecutorial vindictiveness should be limited to "post trial prosecutorial conduct" and a third, dissenting judge advocating "an overall balancing test." *Id*. Upon rehearing *en banc*, the Sixth Circuit adopted the test outlined above (combining shades of balancing and burden-shifting), but did not actually find that the underlying facts met any of those factors, instead remanding the case to the district court to apply the proper test. *Id.* at 457.

With regard to whether the prosecutor had a "stake" in deterring the defendants from filing bail motions, the court in *Andrews* reasoned that "the prosecutor's interest in deterring a bail motion is not as great as a prosecutor's interest in deterring appeals to a trial de novo" because a "prosecutor who loses a bail motion does not have to retry a case." *Id.* at 454. However, the court also refused to "accept the government's argument that the prosecutorial stake in a pretrial setting is always so *de minimus*," such that this standard could never be met.

6

Case 1:06-cr-00009 Document 86 Filed 10/04/07 Page 6 of 14 PageID #: 791

*Id*.  Instead, the court noted that every "situation will necessarily turn on its own facts," *id*., and held that, in the case at hand, the "exact nature of the government's stake . . . will have to be addressed by the district court on remand."  *Id*. at 454, n. 5.

Accordingly, under *Andrews*, whether the prosecutor has a "stake" in deterring the exercise of a right in the pretrial setting—apart from the right to reject a plea offer—is simply left open to the facts of that particular case.  Subsequent case law provides more guidance.  In *United States v. Goodwin*, 457 U.S. at 371-72, the Supreme Court addressed whether a prosecutor who brought more serious charges after the defendant had invoked his right to a jury trial had exhibited a "reasonable likelihood of vindictiveness."  The Court found that the prosecutor's conduct could not meet this standard, reasoning that neither the imposition of the right to trial nor "[t]he distinction between a bench trial and a jury trial . . . compel[led] a special presumption of prosecutorial vindictiveness whenever additional charges are brought after a jury is demanded."  *Id*. at 383.

Similarly, in *Suarez*, the Sixth Circuit held that, "[a]lthough the right to a trial by a jury of one's peers is a highly protected right, asserting this right by rejecting a plea bargain is not enough to provide evidence of an improper motive on the part of the prosecution."  263 F.3d at 479.   In addition to asserting his right to a trial, the plaintiff in *Suarez* also claimed that he was planning to file additional motions to suppress and to dismiss the charges; however, the court found that, cumulatively, the plaintiff could not "show the prosecution had any 'stake' in preventing the assertion of these rights."  *Id*.  Instead, the court reasoned that "the real 'gain' the prosecution sought was avoiding the trial, not the motions ancillary to the trial, and avoidance of trial as a prosecutorial stake is implicit in the plea bargaining process, and therefore exempt

7

under *Bordenkircher* from being held vindictive." *Id*. at 480; *see also United States v. Wells*, 211 F.3d 988, 1002 (6th Cir. 2000) ("Because there is nothing in the record to suggest that the government's attorney had a stake in the prosecution . . . or that he acted unreasonably, the claim fails.")

The defendant seeks to distinguish his case on the grounds that he was not informed about the additional charges during plea bargaining. *Bordenkircher*, alone, might lead credence to the defendant's argument, inasmuch as that case involved direct threats made to the defendant during plea negotiations. 633 F.2d at 455-56. In *Goodwin*, however, the Supreme Court addressed this very situation. The defendant in *Goodwin* had conducted plea bargaining negotiations with an attorney who did not even have the authority to try felony cases or seek indictments from the grand jury. The defendant in that case, therefore, had even less of an expectation that serious charges might later be brought during his plea negotiations than did the defendant in this case. *Id*. at 385 (Blackmun J., concurring) ("[I]n *Bordenkircher* the Court expressly distinguished and left *unresolved* cases such as this one, 'where the prosecutor without notice brought an additional and more serious charge after plea negotiations . . . had ended with the defendant's insistence on pleading not guilty.") (emphasis in original) (quoting *Bordenkircher*, 434 U.S. at 360)).

Nevertheless, the Court in *Goodwin* held that, absent direct evidence of a vindictive motive, the additional charges—brought by a new lawyer who was not even assigned to the case at the plea bargaining stage—could not support a finding of prosecutorial vindictiveness, even though the defendant had not been given prior notice of the charges. *Id*. at p. 382-83. The Court reasoned that:

8

> An initial indictment—from which the prosecutor embarks on a course of plea
> negotiation—does not necessarily define the extent of the legitimate interest in
> prosecution. For just as a prosecutor may forgo legitimate charges already
> brought in an effort to save the time and expense of trial, a prosecutor may file
> additional charges if an initial expectation that a defendant would plead guilty to
> lesser charges proves unfounded.

*Id*. at 380. The Court in *Goodwin* found that *Bordenkircher* could not be strictly limited to direct threats made at plea negotiations, but instead signified that "the mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified." *Id*. at 382. Accordingly, to the extent that the defendant's argument in favor of a prosecutorial "stake" survives *Bordenkircher* itself, it cannot survive *Goodwin*.

Similarly, in *Suarez*, it appears that the defendant did not have notice of at least some of the additional charges that were brought after plea negotiations failed. *See* 263 F.3d at 474-75; 480 (discussing the addition of the charges under the Travel Act and later noting that "[w]hether the defendant was overly surprised by anything in the superseding indictment was unclear"). Nevertheless, the court found that the defendant could not show any prosecutorial "stake" in preventing the assertion of the plaintiff's rights. *Id*. at 479. The Sixth Circuit quoted the Supreme Court's reasoning in *Goodwin* that "a defendant before trial is expected to invoke procedural rights that inevitably impose some 'burden' on the prosecutor" but that "[i]t is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter." *Id*. at 479-80 (quoting *Goodwin*, 457 U.S. at 381). Under *Suarez*, asserting the right to trial "by rejecting a plea bargain *is not enough* to provide evidence of an improper motive." *Id*. at 479 (emphasis added).

Nevertheless, the defendant asserts only that the government retaliated against him by

9

adding additional charges after he invoked his right to a trial. The defendant does not allege that he exercised any other right. Instead, the defendant states that "the charges were filed only after it became clear that Mr. Thomas was going to insist upon his right to trial." (Docket No. 79 at p. 5) In addressing the requirement of a prosecutorial "stake" in deterring the defendant from exercising his right, the defendant merely asserts that "the Government had a stake (i.e. hours of trial preparation)." (*Id.*)

Under *Goodwin* and *Suarez*, that is not enough. Instead, those cases hold that a prosecutor has no "stake" in deterring the exercise of a right to trial, regardless of whether the charges were discussed during plea negotiations. *Goodwin*, 457 U.S. at 382; *see also Suarez*, 263 F.3d at 479. Inasmuch as the defendant's position would require the court to directly contradict those cases, it must fail. The defendant has failed to show any prosecutorial "stake" in deterring his right to a trial.

### B. Unreasonable Conduct

In addition, the court finds that the defendant has failed to demonstrate any unreasonable conduct on the part of the government. In *Andrews*, the Sixth Circuit stated that "[a] prosecutor who adds on extra charges after the exercise of a procedural right is arguably acting less vindictively than a prosecutor who substitutes a more severe charge for a less severe one" because "[i]n the first situation, a prosecutor might well have made an honest mistake." 633 F.2d at 454. However, "there is no *per se* rule here," which is illustrated by the fact that, in *Andrews* itself, the prosecutor added, instead of substituting, a more severe charge, and yet the court left the question open on remand. *Id.*

In the case at hand, the government added, rather than substituted, more severe charges.

10

Although this does not, in of itself, prove that the government's conduct was reasonable, it weighs against the defendant on this point. Especially in light of the fact that the defendant has not raised any facts that show the government's conduct to have been unreasonable, the fact that the government simply added new charges must not be overlooked. *See Suarez*, 263 F.3d at 479 ("[T]he mere presence of a superseding indictment bringing additional charges is not sufficient to be presumptively unreasonable."); *Bordenkircher*, 434 U.S. at 364 ("So long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests at his discretion.")

The defendant alleges that the failure of the government to discuss the possibility of the additional charges during plea negotiations, and the fact that the charges were not based on the discovery of any new evidence, demonstrates that the government's conduct was unreasonable. However, although the presence of either of these factors would exonerate the government from any possibility of unreasonable conduct—*see, e.g., Bordenkircher*, 434 U.S. at 360 (holding that a defendant could not show vindictive prosecution when he was "fully informed of the true terms of the offer when he made his decision to plead not guilty"); *Suarez*, 263 F.3d at 480 ("If the prosecution can show that the additional charges were not brought earlier because they were based on new evidence, it will successfully rebut a showing of vindictiveness.")—the absence of those factors does not, in of itself, demonstrate unreasonable conduct. *See Wells*, 211 F.3d at 1001-02 (holding that, although the superseding indictment was not based on newly discovered evidence, "there is nothing in the record to suggest that the government's attorney . . . acted unreasonably").

11

To the extent that the record suggests anything regarding the government's conduct, it suggests that the conduct was reasonable. The new charge was based on evidence stemming from the defendant's arrest, and that evidence was provided to the defendant by the government in a timely manner. Although the defendant asserts that the government timed its Superseding Indictment in an unreasonable way, the facts in the record point in the opposite direction. The government filed its Superseding Indictment when it became apparent that the defendant was not going to accept the plea bargaining and that trial was imminent. In addition, the government alleges that it informed the defendant of the Superseding Indictment on June 29, 2007, twenty-five days before the trial date of July 24, 2007. Subsequently, this court granted a continuance to allow the defendant additional time to conduct any necessary discovery to answer the additional charges raised in the Superseding Indictment. Finally, after the court granted the defendant's motion to continue, the government initiated a second round of plea bargaining on August 10, 2007. Its initiation of these plea negotiations provides evidence in favor of the government's desire that the defendant make a freely informed choice to either accept the government's plea offer or exercise his right to a jury trial. Accordingly, the court finds that the government's conduct was not unreasonable.

### C. The Government's Explanation

Finally, even if the defendant had established a prosecutorial "stake" in the exercise of his right, and that the government's conduct was unreasonable, the government would have the opportunity to rebut that evidence by providing its own explanation for the additional charges. *See Andrews*, 633 F.2d at 456 ("We think that the government should be given an opportunity to rebut a finding of realistic likelihood of vindictiveness."). In *Andrews*, the Sixth Circuit

12

indicated that, before a court dismisses such an explanation, "[t]he district court should conduct an evidentiary hearing where the government's explanations can be formally presented and tested." *Id*. at 457.

If the defendant had met his burden to demonstrate a reasonable likelihood of vindictiveness, the court would be inclined to examine the government's explanation at hearing. Because the defendant has not met that burden, such a hearing is unnecessary. However, the court will note that the government's explanation of its decision to pursue a superseding indictment—that the additional charges were necessary to pave the way for the admission of evidence at trial—appears, at this stage, to be a valid one. When a defendant accepts a plea, it is, of course, unnecessary to admit evidence at trial. The court sees no reason to doubt that a prosecutor could, after the failure of the plea-bargaining process, discover that more charges are necessary in order to admit the evidence required to convict the defendant on the indictment as it currently exists. At that time, the prosecutor would need to file a superseding indictment. The validity of this justification is illustrated by the *Suarez* case, where "[a]ccording to the government's brief," at least some of the additional charges were brought "with the primary purpose of providing avenues for the presentation of evidence about Suarez's gambling." 263 F.3d at 481.

In *Suarez*—unlike the present case—the government went so far as to admit that it was not sure that some of its claims were legally viable, a fact that led the court to state, "[t]his might well raise suspicions about the reasonableness of the government's conduct at least to these charges." *Id*. However, the court proceeded to state that the "defendant's main protection against the bringing of unfounded criminal charges"—as opposed to retaliatory charges—"is

13

through the institution of the grand jury." *Id*. Finally, the *Suarez* court noted that, while "[i]t may well be that the prosecution . . . brought these charges primarily for their possible effect on the other 'core' charges," this appeared to be a legitimate justification, in as much as "[t]he defendant point[ed] to no case that forbids the government's trial strategy." *Id*.

In the case at hand, the government has not admitted—and the plaintiff has not alleged—that the new claims are not legally viable. Rather, the government has asserted that the new charges are necessary in order to introduce evidence that is also relevant to the original charge. Under *Suarez*, this is a legitimate trial strategy.

Because the defendant has not established a "realistic likelihood of vindictiveness," the court finds that the additional charges filed by the government did not violate his Due Process right against vindictive prosecution. Therefore, it is is hereby **ORDERED** that the defendant's Motion to Dismiss Counts Two, Three, and Four of the Superseding Indictment (Docket No. 79) is **DENIED**.

It is so ordered.

Enter this 3rd day of October, 2007

                                                ALETA A. TRAUGER
                                              United States District Judge